## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| FORT WAYNE WOMEN'S HEALTH ORGANIZATION, ULRICH KLOPFER, M.D., and JANE DOE(S), being fictitious names, real names of said plaintiffs being withheld to protect their privacy, said fictitious names being intended to designate present and prospective patients of the FORT WAYNE WOMEN'S HEALTH ORGANIZATION, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, and | ) ) | |
| DONEGAL CORRIDOR, LLC, an Indiana For-Profit Corporation, | ) ) ) ) | |
| (Proposed) Intervenor, | ) ) | |
| v. | ) ) | Cause No.: 1:90-CV-66 |
| WENDELL BRANE, BRYAN J. BROWN, ELLEN BROWN, and NORTHEAST INDIANA RESCUE, and all individuals with whom they have conspired and acted in concert to deprive plaintiffs of their rights, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the court on the Motion to Intervene filed by the proposed intervenor, Donegal Corridor, LLC ("Donegal") on April 23, 2009. Docket at 156. Also before the court is the Motion to Vacate Injunction and its Ancillary Orders filed by defendant Bryan J. Brown ("Brown") on July 10, 2009. Docket at 166. For the reasons discussed below, the Motion to Vacate Injunction and its Ancillary Orders is GRANTED and the Motion to Intervene is declared MOOT. The Agreed Order for Permanent Injunction issued by this court on July 31, 1990 (docket at 42), as well as the amendments to that injunction (docket at 120 and 122), and

the court's Order of February 20, 1991 (docket at 82) are hereby VACATED and this case is DISMISSED.

## DISCUSSION

As the cause number of this case indicates, it was filed in 1990. At that time, the Fort Wayne Women's Health Organization ("FWWHO") occupied a building located at 827 Webster Street in Fort Wayne, Indiana ("the Webster Street property"). The FWWHO and Dr. Klopfer provided health services to women. These services included providing abortions to women who sought them. The issue of abortion was every bit as controversial and divisive then as it is today. The FWWHO and the Jane Doe plaintiffs filed this action on April 25, 1990, seeking to prohibit the defendants from physically preventing women from accessing the clinic. The FWWHO claimed that the defendants, and those acting in concert with them, verbally and physically intimidated and threatened women who were coming to the clinic to seek abortions. The plaintiffs moved the court to enjoin the defendants from such activities. On May 8, 1990, this court entered a preliminary injunction setting forth certain specific parameters which the defendants, or anyone else wishing to conduct a protest near the Webster Street property, had to abide by. *See* docket at 30. The preliminary injunction also placed restrictions on opposing protests and activities conducted by the plaintiffs or their advocates. On July 31, 1990, the parties to this litigation entered into an Agreed Order for Permanent Injunction, which the court signed and entered. *See* docket at 42. Then, on October 2, 1992, the court entered an Agreed Order Modifying Permanent Injunction. *See* docket at 120 and 121. The court also entered an Order amending the permanent injunction on December 8, 2002. Docket at 122. Finally, the court subsequently entered an Order awarding the plaintiffs a judgment against the defendants

for attorneys' fees and costs. Docket at 82.

Donegal now wishes to intervene in this case and seeks, ultimately, to vacate the permanent injunction altogether. Motion to Intervene, p. 2. Donegal asserts that its right to intervene is based on the fact that it now "has an interest relating to the property which is the subject of the instant matter and upon which the Permanent Injunction and Orders . . . pertain and affect." *Id*. Donegal claims that it "owns the property . . ." and "has no affiliation or connection with Plaintiffs in this case. Donegal's interests are not adequately represented by any of the existing parties as the Plaintiff's [sic] no longer conduct business on the property and the Defendants do not own the property." Finally, Donegal argues that "a question has arisen as to the continued applicability and validity of the Permanent Injunction and related Orders . . . and Donegal seeks to vacate any such Permanent Injunction and related Orders as they should neither apply any further and as such negatively affect Donegal's use and enjoyment of the property." *Id*., pp. 2-3. For these reasons, Donegal "request[s] leave from this Court (1) to be allowed to intervene in this matter for a limited purpose, and (2) to file the attached Motion to Vacate in this action." *Id*., p. 3.

In support of its motion to intervene, Donegal argues that it is now the legal owner of the property at 827 Webster Street. Motion to intervene, p. 2. Donegal also states that it "is not affiliated in any way with either Plaintiffs Ulrich Klopfer . . . or . . . FWWHO. Donegal does not perform, nor has it ever performed, abortions at the property. The lower floor is rented to [Arch Angel Institute, Incorporated] [AAII]." *Id*., p. 4. According to Donegal, "[m]aintaining the injunction, to the extent it exists, would cause damage to Donegal and AAII." *Id*.

3

Defendant Brown, who attached a lengthy affidavit to his motion to vacate the injunction, argues that the existence of the injunction has presented an obstacle to his admission to the Indiana Bar. Affidavit of Bryan Brown, ¶¶ 96-99. Brown points out that he has already been admitted to practice law in the states of Kansas (where he practiced law for more than 10 years) and Montana. *Id*., ¶ 53.[1] Despite this, he has experienced difficulty in his attempts to become a licensed attorney in Indiana. *Id*., generally. Brown also argues that the plaintiffs in this case have made no effort for more than 15 years to collect from him a judgment this court awarded them for attorneys' fees. *Id*., ¶¶ 34-36.[2] Perhaps most importantly, Brown points out that he has never been accused of violating the permanent injunction nor has he ever intended to do so. *Id*., ¶¶ 79-81, 110, 148, and 149. For all of these reasons, Brown moves the court to vacate the injunction and its ancillary orders.

Shortly after Donegal's motion to intervene was filed, the court set this matter for a hearing. Notice of the hearing was served on the original plaintiffs and their legal counsel (those who still exist and/or could be found), as well as other entities the court believed might wish to file a response to Donegal's motion. The latter included the City of Fort Wayne and the First Presbyterian Church in Fort Wayne.[3] Donegal and Brown also served all the known parties of

---

[1] Brown states that he was also allowed to sit for the bar exam in Missouri, although it is unclear whether he was ever admitted to the Missouri Bar.

[2] Following the issuance of the permanent injunction, the plaintiffs moved to recover attorneys' fees and costs in this case. They were awarded the sum of $53,864.06 in fees and the sum of $7,752.08 in costs and expenses. Court's Order of February 20, 1991, docket at 82.

[3] When the "pro-choice" demonstrations and "pro-life" protests that gave rise to this lawsuit were taking place, some of the protest activities spilled over onto the streets and sidewalks adjacent to the First Presbyterian Church, which is located just across the street from the Webster Street property. Consequently, an Agreed Order Modifying the Permanent Injunction was entered in October of 1992 (docket at 120) which, among other things, prohibited

4

interest with copies of their respective motions. The only response received to either of the pending motions was filed on behalf of Miscellaneous Parties Leslie Raymer and Fort Wayne Feminists. Docket at 165. These Miscellaneous Parties stated that they "agree[] that this issue is moot as the building [on Webster Street] is no longer being used as an abortion clinic." *Id*., p. 1.

The court held a hearing on the pending motions on July 24, 2009. *See* docket at 167. Donegal Corridor appeared with counsel, Brown appeared on his own behalf, and defendant Wendall Brane appeared *pro se*. No one appeared on behalf of any of the original plaintiffs. *Id*. At the hearing, Brown was administered an oath and presented brief testimony, and his affidavit attached to his motion to vacate was admitted as an exhibit. *Id*. Brown essentially reiterated in his testimony the facts and representations he made in his affidavit.

This was not, and is not now, an abortion case. The case was brought, and the injunction (and subsequent agreed modifications thereto) entered, for the sole purpose of maintaining peace in the area immediately surrounding the Webster Street property at the time the FWWHO occupied it. With the exception of some relatively minor disputes that arose after the entry of the original injunction, which necessitated the entry of the agreed modifications, the injunction achieved its purpose. Both sides were subject to certain restrictions intended to allow them to carry on their activities (i.e., the plaintiffs' ability to operate and utilize the health clinic and the defendants' ability to exercise their constitutional right to conduct public protests) while simultaneously respecting the physical safety of clinic employees, patients, and protesters on both sides. For nearly 20 years, the very detailed injunction and the modifications thereto

---

protesters from conducting their activities within a specified number of feet from Church property.

succeeded in keeping peace notwithstanding the very tense atmosphere that arose out of the protests and activities conducted at the site. Both sides–and everyone even tangentially associated with them–respected this court's orders and any further potential conflict (or even physical violence) was averted.[4]

As for Brown, he is correct that the record does not indicate that he has ever done anything to violate any order of this court. (The same applies to defendant Wendall Brane and all of the other original defendants, even though they did not join in the present pending motions.) Brown concedes in his affidavit that his concern that the existence of the injunction in this case as well as the order granting the plaintiffs a judgment against him and the other defendants is prohibiting him from obtaining admission to the Indiana Bar is based at least in part on "conjecture." Brown Affidavit, ¶ 100. However, he also represents that this conjecture is not based solely on his own subjective beliefs, but also on "communication that I have received from the Indiana Board of Law Examiners." *Id*. Brown maintains that the continued existence of the injunction and its ancillary orders (including the Order awarding the plaintiffs attorneys' fees and costs) has rendered him "unable to secure work in any legal setting in Indiana." *Id*., ¶ 102. To the extent that Brown is correct, this was clearly not an intended result when the court entered the permanent injunction and its subsequent ancillary orders.[5] The court

---

[4] In his affidavit, Brown admits that "[a]t the conclusion of the preliminary injunction stage of the proceedings [in this case] my co-defendants and I were satisfied with the outcome, since the relief decreed was a cross injunction which burdened both the defendants and the plaintiffs . . . ." Brown Affidavit, ¶ 5.

[5] Brown readily concedes in his affidavit that there may be other factors at play in his inability to gain admission to the Indiana Bar, including his long record of involvement in the pro-life movement around the country, an involvement which he states resulted in him being arrested on more than one occasion (although, apparently, never in Indiana). Brown Affidavit,

also hastens to note that Brown has always demonstrated respect for this court and conducted himself in a professional and courteous manner when appearing at any proceeding before this court including the most recent hearing on July 24, 2009.

It is well established that courts may modify or even vacate injunctions if a movant establishes that the injunction "injuriously affects his interests." *U.S. v. Board of School Com'rs of City of Indianapolis*, 128 F.3d 507, 511 (7th Cir. 1997) (citations omitted). *See also*, *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.*, 91 F.3d 914, 920 (7th Cir. 1996) (court imposed injunctions may be modified to adapt to changed circumstances).

The evidence and the record before the court at the present time demonstrates that Brown may very well be under an unfair and unintended burden by the presence of the permanent injunction in this case and its associated ancillary orders. Also, as stated, no party to this lawsuit violated the injunction or its amendments during the time that the FWWHO continued to occupy the Webster Street property. Finally, as also stated above, none of the original plaintiffs nor any other party served with notice of the pending motions has come forward to oppose them. For all of these reasons, the court concludes that the motion to vacate the permanent injunction and its ancillary orders filed by the defendant, Bryan Brown, should be granted. Granting Brown's motion renders moot Donegal Corridor's motion to intervene.[6]

---

¶¶ 58-59, 99, and 113. Be that as it may, the only matter before this court is whether the injunction and its ancillary orders should stand or whether Brown has made an adequate showing that he is unduly burdened by the existence of those orders and they should be vacated.

[6] At the hearing on July 24, 2009, the court indicated to Donegal Corridor and its counsel that the court had serious concerns about the company's standing to intervene and, more specifically, whether it had met its burden for intervention under applicable law. Nonetheless, Donegal's counsel agreed that if the court granted Brown's motion for relief and vacated the injunction and its ancillary orders, Donegal's motion would be rendered moot since the purpose

7

**CONCLUSION**

For the reasons set forth in this Opinion and Order, the Motion to Intervene filed by Donegal Corridor, LLC (docket at 156) is declared MOOT; the Motion to Vacate Injunction and its Ancillary Orders filed by Defendant Bryan J. Brown is GRANTED. The Agreed Order for Permanent Injunction issued by this court on July 31, 1990 (docket at 42), as well as the amendments to that injunction (docket at 120 and 122) and the court's order awarding the plaintiffs' fees and costs against the defendants (docket at 81) are hereby VACATED and this case is DISMISSED.[7]

Date: August 6, 2009.

    /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana

---

of its motion to intervene was to achieve the same result as Brown. Therefore, it is not necessary to indulge in a discussion and analysis of the merits of Donegal's motion to intervene.

[7] The record does not reflect whether any of the plaintiffs recovered any money from any of the defendants pursuant to the court's award of fees and costs. Brown represented in his affidavit that while the plaintiffs made some effort years ago to recover money from him, they apparently did not succeed. However, to the extent that any money was recovered from any defendant, that recovery stands. This Order vacates the attorney fee award from this point forward and is not intended to have any retroactive effect.